United States Courts
Southern District of Texas
FILED

*May 27, 2025*

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**Jayden L. Kannedy and Thien Tony Hoang Tran, pro se**
Plaintiffs,
**10000 Hammerly Blvd Apt. #240,**
**Houston, TX 77080**

**4:25cv2417**

v.

**Harris County Commissioners Court**
**1001 Preston St., Suite 934**
**Houston, TX 77002**

**Harris County Constable's Office**
**Houston Police Department (HPD)**
**Harris County District Attorney's Office (HCDAO)**
**Harris County Clerk's Office**
Defendants.

---

# Jurisdictional Basis

Plaintiffs initiate this action pursuant to 42 U.S.C. § 1983, which provides that "every 'person' who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or 'causes to be subjected,' any person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party."

This action is also brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which emphasizes the municipality's liability under Section 1983 of the Civil Rights Act of 1871. The Court in *Monell* held:

> "The language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be wholly immune from liability under § 1983. We adhere to that conclusion today."

This precedent underscores that municipalities are not immune from liability under Section 1983, thus allowing individuals to sue municipalities directly for monetary damages when their policies or customs result in the violation of constitutional rights.

## Parties

### Plaintiffs:

- Jayden L. Kannedy
- Thien Tony Hoang Tran

### Defendants:

- City of Houston
- Harris County
  - Constable's Office
  - Harris County District Attorney's Office (HCDAO)
  - Clerk's Office
  - Houston Police Department (HPD)

### Additional Parties:

- Justice of the Peace Court, Precinct 5, Place 2, Harris County, Houston, Texas, under Hon. Judge Jeffrey S. Williams.

## Factual Allegations

### April 28, 2022

Civil Case Number 225200042944 was in litigation at the Justice of the Peace Court, Precinct 5, Place 2, Harris County, Houston, Texas. Hon. Judge Jeffrey S. Williams presided over the civil eviction proceedings involving Plaintiff Hoa Xuan Tran and Defendants Thien Tony Hoang Tran and Jayden Kannedy concerning the property at 11114 Oakcenter Dr., Houston, TX 77072.

Judge Williams exhibited partiality by asking plaintiff Hoa Xuan Tran about drug use within the home, a topic neither party had mentioned. Such inquiries, unrelated to the case and hearing about property possession and eviction rights, indicate prejudicial intent. The judge's focus on irrelevant questions about drugs rather than ownership,

deeds, and mortgage details further demonstrates bias. HOA XUAN TRAN had not access to the property and leveraged no contentions related to "king" judge jeffrey S williams insinuations. These questions from the king of the trial were no doubt rooted in prejudice and bias against Jayden Lashunn Kannedy, the only black male in attendance for the eviction.

Despite substantial evidence presented by Thien Tony Hoang Tran and Jayden Kannedy, including valid deeds and active mortgage documents, Judge Williams denied adequate time for Mr. Tran to present his case and disregarded crucial information. "King" judge Jeffrey s. Williams was confused as to how thien tony hoang tran and jayden kannedy kept denying any claims made to the court about their need to pay some form of rent to hoa xuan tran. A dialog that was most certainly a big departure from his typical eviction proceedings. Jayden L. Kannedy's attempt to clarify the situation specifically indicating that the document in the other party's possession was fraudulent. Jayden kannedy was interrupted and silenced under threat of contempt and immediate jailing. Judge Williams continued to refer to himself as a "King" and denied Mr. Tran's claim to the property, imposing a $10,000 bond to appeal, effectively preventing an appeal due to financial constraints.

Following the biased trial, a writ of possession was issued, compelling the constable's office to remove Jayden Kannedy and Thien Tran from the property using force, authorized by Judge Jeffrey S. Williams.

## June 11, 2023

The Plaintiff discovered that the property at 11114 Oakcenter Dr., Houston, TX 77072, had been fraudulently sold without consent. The false deed on file, claiming Thien Tony Hoang Tran had sold his property rights for $10.00, signed "Tony Tran," which is not his legal first name. Despite substantial evidence, including valid deeds and mortgage statements, the Houston Police Department (HPD) and Harris County District Attorney's Office (HCDAO) failed to take appropriate action.

**Police Reports Filed:**

- 0599407-21 (burglary and theft)
- 1104519-21 (08/16/2021) (breaking and entering classified as harassment)
- 0576064-22 (05/01/2022) (forgery)
- 0043813-23 (01/09/2023) (forgery/fraud/counterfeit)

Sergeant Hart of HPD informed the Plaintiff that while HPD recommended the cases to the DA, the HCDAO declined to prosecute due to the familial relationship between the Plaintiff and the perpetrator, Hoa Xuan Tran. Despite the Plaintiff providing substantial evidence, including valid deeds and documentation of fraud, the HCDAO failed to act, citing discomfort in prosecuting a mother. And that the situation was best handled in civil court... judge Jeffrey s. Williams's court to be precise.

## Legal Violations:

1. **Forgery** (Texas Penal Code, Title 7, Chapter 32): Falsifying a document with the intent to defraud.

This is just one of the many counts of fraud considered irrelevant by the DAs Office on the grounds that mothers are under special treatment when committing felonies against their children

**There's more**

**Tampering with a Government Record** (Texas Penal Code, Title 7, Chapter 37): Filing false information with a government office.

2. **Fraud** (Texas Penal Code, Title 7, Chapter 31): Intentionally deceiving others for financial gain.
3. **False Statement to Obtain Property or Credit** (Texas Penal Code, Title 7, Chapter 32): Using false documents to obtain property or credit.

Despite multiple attempts by the Plaintiff to have the false deed removed and seeking assistance from the Clerk's Office, HPD, and HCDAO, the failure of these entities to act resulted in significant harm, including the loss of the Plaintiff's home and financial damages. The HCDAO's delayed criminal charges against the perpetrators, only after being threatened with legal action, underscores their negligence.

---

The HCDAO may claim unawareness of the gravity of this situation or assert that the case details received from HPD lacked the necessary paperwork or concrete evidence. However, the Plaintiff can substantiate through direct correspondence with the HCDAO on numerous occasions via an email chain responded to by the DA's Office. This email chain, initially sent from tonytran1220@gmail.com to DA@DAO.HCTX.NET on April 6th,

2023, at 10:42 PM Central, was prompted by Sergeant Hart of the HPD. Sergeant Hart emphasized the importance of submitting comprehensive evidence to influence the DA's discretion and motivate the office to fulfill its duties on behalf of Thien Tony Hoang Tran, whose property rights were being unlawfully violated. These property rights are protected under federal accords and the Constitution, which the State of Texas and its officers are compelled to uphold in their official capacities.

The referenced email also cites an earlier correspondence with the HCDAO from May 18th, 2022, and includes forwarded messages from previous interactions regarding the same matter. In the May 18th communication, "Nancy" from "Constituent Services" assured Mr. Tran that the issue would be escalated to their "Consumer Fraud Division" and advised him to expect a response within "7-10 days" under case number "P057606422E." Despite this promise, the HCDAO escalated the case to an inadequately trained intern, Jaime Franks Culotta, identified as a "Legal Intern for the Consumer Fraud Division: Harris County's District Attorney."

The email exchanges between Mr. Tran and intern Jaime Franks Culotta highlight the DA's Office's negligence. When Mr. Tran provided the requested evidence, it took more than a week for the intern to respond, stating his inability to locate the case in the District Clerk's Office and requesting a picture related to the civil case that resulted in Mr. Tran's eviction. Upon receiving the screenshots of the court records with visible case numbers from Mr. Tran, the intern failed to follow up, leaving Mr. Tran without any further direct contact regarding his willingness to press charges. This unresponsiveness from the HCDAO underscores their neglect of the nature of the crime affecting Mr. Tran.

The DA's Office, due to its close working relationship with the Houston Police Department, plays a crucial role in determining cases that best serve public interest and uphold constitutional provisions during the processes of booking, investigating, and litigating. However, intern Jaime Franks Culotta's inadequate response raises questions about the level of training provided to him for properly handling such serious matters.

Despite the severity of the situation, the Defendant, through the District Attorney's Office, grossly neglected its duty to conduct a thorough investigation into the documents that were undoubtedly submitted to their office. This documentation pertained to fraud and Mr. Tran's intention to press charges before any escalation, aiming to secure and protect his rights. Repeatedly, the Plaintiff was misled into believing the matter was merely civil and could be managed in civil court.

This fraudulent deed proceeded to civil court, where Judge Jeffrey S. Williams ruled in favor of the fraudulent deed, stating that his court was not responsible for determining fraud but that of the appropriate authorities. He further asserted that had substantial fraud been committed, the DA's office would have taken action by pressing criminal charges; this statement from Jeffrey s williams came just before he swiftly ruled in favor of HOA XUAN TRAN.

The Defendant's failure to take appropriate action and promptly investigate the case documentation caused significant harm to the Plaintiff, including the loss of his home and financial damages. Additionally, the Plaintiff faced a complex web of legal documents and commercial transactions that were impossible to undo without the authority and assistance of municipal entities. This entire ordeal could have been avoided had the DA's office performed its duty diligently from the outset.

**Note**: Since the time of this writing, the DA has moved to charge the two criminals responsible for this fraud. However, the timeliness of this action is under scrutiny for several reasons:

1. The DA's Office was made aware of a potential claim against them for not pressing charges, leading to the arrest of the criminals in late 2023, almost two years after the first police report was made.
2. The DA's failure to adequately train their intern, to whom the case was escalated, demonstrates the Houston DA's Office's disregard for treating deed fraud as a criminal matter.
3. The DA taking criminal charges could potentially render any claims against them "moot." However, the damage from their negligence is already done, and thus this office falls under scrutiny for an obvious crime that, at a minimum, violates the constitutional rights of a person by unlawfully depriving them of their property. It is a fundamental tenet of the Constitution that even a layperson understands; hence, a legal institution like the DA's Office should unquestionably recognize this.

Regardless of any pending criminal proceedings, we are suing for their failure to follow through on duty, which directly led to preventable harm against the plaintiffs and their property rights. Further should anyone on the chain of title or currently under the assumption that they have rights to the property discover this level of undeniable evidence and negligence; the city of Houston could see others pursuing under this suit for the losses they incurred related to this case.

The Clerk's Office of Harris County was visited by the plaintiffs on numerous occasions to have the false document removed before the illegal sale of the property at 11114 Oakcenter Drive, Houston, TX 77072. The Clerk's Office told Mr. Tran that his valid deed, dated prior to the false deed on file, could not be placed back on file. Furthermore, they claimed that the removal of the false deed was not at the Clerk's discretion (a statement which is contested, especially when the Clerk is made aware of the crime and fraud). The Clerk's Office cited the need for confirmation from the DA's Office or proof from a crime-stopping entity that the deed on file was indeed fraudulent; as no one in the clerks office is trained to detect a fraudulent document; nor is there a need for them to confirm with the previous title holder about any updates to their property. While this is a clear indication of undertraining of real property clerks; they pushed this responsibility again to the law enforcement agencies responsible for investigation. the denial of equal protection from HPD and the DA's Office prevented any meaningful communications with the clerk's office in regards to the immediate removal of the fraudulent deed.

Finally, the last entity comes into play. The Constable's Office. They were dispatched and removed Thien Tony Hoang Tran (homeowner) and Jayden L. kannedy (renter) under threat of arrest. These officers under the direct court order of king judge Jeffrey s williams walked the criminals right into our home and ensured the criminals were able to take any measures necessary to vacate thien tony tran and jayden Lashunn Kannedy. Ensuring the homeowner was docile and no threat to the criminals stealing his property right before his eyes. All officers were armed and in unmarked vehicles (see video disk for detail)

# Causes of Action with Supporting Case Law and Application to Plaintiff's Case

## 1. Violation of Due Process Rights (Fourteenth Amendment)

The Fourteenth Amendment guarantees due process of law before depriving any person of life, liberty, or property. The actions taken by Judge Jeffrey S. Williams and the Harris County District Attorney's Office resulted in a deprivation of Mr. Tran's property without due process.

**Case Law:**

- **Goldberg v. Kelly**, 397 U.S. 254 (1970): "The fundamental requisite of due process of law is the opportunity to be heard." The biased questioning by Judge Williams and the denial of time to present crucial evidence deprived Mr. Tran of a fair hearing. The Silencing of a black man; well trained in proper case presentation and quorum only re-enforces this claim. Further HPD's Failure to escalate these cases to a detective until legal action was leveraged against the HCDAO is under this scrutiny.

- **Mathews v. Eldridge**, 424 U.S. 319 (1976): "Due process generally requires consideration of three distinct factors: the private interest affected, the risk of erroneous deprivation, and the government's interest." The failure to consider Mr. Tran's evidence and the refusal to investigate the fraudulent deed indicate inadequate procedural safeguards; This triggers all three factors as it would've been in the best interest of the local government to handle this.

  Privately mortgage and title companies have a huge interest in limiting liability related to mortgage fraud and title insurance; further judge Jeffrey S Williams had a plethora of other options available to him in regards to handling a claim made related to the fraudulent document. His blatant disregard for crucial evidence necessary to prove true home ownership proves the risk of erroneous deprivation. Worse, the city could see another filing pursuing this case from anyone who bought the property from the fraudsters- especially if they find out the city and its authorities had the opportunity to prevent their losses as well. This meets the government's interest most certainly.

- **Armstrong v. Manzo**, 380 U.S. 545 (1965): "A fundamental requirement of due process is 'the opportunity to be heard.'" This other case reinforces the first. All related paragraphs preceding apply.

- **Logan v. Zimmerman Brush Co.**, 455 U.S. 422 (1982): "The requirement of due process applies to deprivations of property." The rushed eviction proceedings and biased court actions deprived Mr. Tran and Mr. kannedy of their right to procedural due process. Especially with a judge on a "king" trip making rulings in his kingdom where he dictates who gets to defend themselves and who doesn't...per the officer's affidavit this judge sided whole heartedly with criminals. Worse, the fraud was obvious. any claims from the defendants in the attempt to separate property rights from this suit should be met with heavy scrutiny. Case law is very clear on this.

## 2. Equal Protection Violation (Fourteenth Amendment)

Mr. Tran and Mr. kannedy were denied equal protection under the law due to the DA's Office's refusal to prosecute based on the familial relationship between Mr. Tran and the perpetrator, leading to discriminatory treatment. HPDs failure to investigate further this claim

**Case Law:**

- **Village of Willowbrook v. Olech**, 528 U.S. 562 (2000): "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." The DA's refusal to prosecute because the perpetrator was Mr. Tran's mother shows intentional disparate treatment without a rational basis. When it comes to felony crimes; there can be no room for bias. HPD had a charge enough to assign a competent investigator much earlier on; especially considering felony crimes were committed.

Note: The DAs office should be aware once a document has been filed and it's found fraudulent- that fraud is not just against the homeowner but office's of the State of Texas. Any fraudulent document such as a deed should be investigated with extreme prejudice. This crime at minimum is a violation of someone's constitutionally protected rights; we ask the court to support this opinion as in essence it is fact. The failure to stop said document truly is the nexus and CRUX of this municipal liability claim manifesting. While there were numerous issues along the way such as a racist judge Jeffrey s williams, and untrained interns taking on deed fraud cases and failing to follow through; truly had anyone taken dare we say a ½ hour to look at the documents presented at each and every turn related to Mr.Tran's legal ownership of 11114 oakcenter dr houston Texas 77072. It would have been made clear and apparent as per the detective's affidavit the fraudulent document was "Obvious".

- **Yick Wo v. Hopkins**, 118 U.S. 356 (1886): "Though the law itself be fair on its face and impartial in appearance, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." The DA's selective enforcement based on familial relationship mirrors discriminatory application of laws. HPDs failure to investigate or treat this case

like the massive consumer fraud case directly meets this opinion from the courts.

- **Plyler v. Doe**, 457 U.S. 202 (1982): "The Equal Protection Clause was intended to work nothing less than the abolition of all caste-based and invidious class-based legislation." The DA's refusal to act based on the nature of the relationship between Mr. Tran and the fraudsters denied him equal protection under the law. Making him and inadvertently Jayden Lashunn Kannedy second class citizens whose rights were subject to the onslaught that saw one fraudulent document stripped away at their early 20s. Years of youth spent struggling to make ends meet when they had a home and promising careers. These are valuable years to any human being's life as they are growing to become true men and setting their foundation in society for who they are and what they wish to be. These years were spent in the back seats of minivans many a night; the back of uhaul Trucks, and in tents. Their reward for trusting the justice system. A system of king judges and lawyers with their own opinions about the law instead of knowledge and enforcement of it. Truly no amount of money can return that level of youth or mentality. This experience has changed the plaintiffs for the rest of their life times.

**Wren v. United States**, 517 U.S. 806 (1996): "The Constitution prohibits selective enforcement of the law based on considerations such as race." The selective inaction by the DA's office based on familial relations is discriminatory enforcement. Further, the bias from jeffrey S. Williams to silence the only black male in the courtroom that day and set him outside of the gates only to be heard at the end could only be classified as pure racism. Mr. kannedy was his UIL district champion in policy debate and had gone to nationals NSDA for 3 years. Mr. Kannedy can be considered very well trained in proper quorum and appropriate speech. There is no rational basis for the treatment this plaintiff experienced at the voice and gavel of jeffrey s. Williams other than blatant racism.

## 3. Failure to Train Employees or Interns (Municipal Liability)

The Harris County _District_ Attorney's Office failed to adequately train its intern, Jaime Franks Culotta, in handling cases involving complex fraud, leading to the improper dismissal of Mr. Tran's claims. Further, there is no known training for HPD clerks in terms of escalating cases of fraud to the proper detectives. While there is a consumer fraud division.. This division seemed very unconcerned with the documents Mr. Tran presented to prove their need to assign a detective quicker. Instead also waiting for legal action to be leveraged to begin the process of arresting these criminals.

**Case Law:**

- **City of Canton v. Harris**, 489 U.S. 378 (1989): "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." The DA's failure to properly train Culotta on handling fraud cases and evidence submission indicates deliberate indifference to how Mr. Tran's case was handled. As well as HPD's indifference. Relevant Respect most certainly refers to relevant training for their obligations. None of these entities exhibited this; only when a credible legal dispute was leveraged did the plaintiffs see any protection of their rights


- **Walker v. City of New York**, 974 F.2d 293 (2d Cir. 1992): "A municipality's failure to train or supervise its officers can constitute a 'policy or custom' actionable under § 1983 if it amounts to 'deliberate indifference' to the rights of persons with whom the police come into contact." The mishandling of Mr. Tran's evidence and the DA's office's lack of follow-up reflect inadequate training and oversight. Further the clerk's filing of this document is indicative of very little oversight when it comes to deed filings. This is deliberate indifference as no one was concerned at all to the gravity of anything being presented or told to them. Not even the intern who had the case thrust upon him by a negligent DAs office.

- **Zinermon v. Burch**, 494 U.S. 113 (1990): "Section 1983 does not provide a remedy for all conduct that results in injury, but only for conduct that causes the deprivation of rights protected by the Constitution or laws of the United States." The intern's failure to properly investigate and escalate Mr. Tran's case showcases a lack of procedural safeguards and training. Further this indicates that even if alm conduct of any of the officers is considered constitutional if that conduct resulted in the deprivation of our rights it can be a cause for remedy.

What we leverage meets this entirely

- **Connick v. Thompson**, 563 U.S. 51 (2011): "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." The glaring oversight in training on fraud cases demonstrates an obvious need for proper training. Also most preceding paragraphs above this link directly

## 4. Dereliction of Duty

The Harris County District Attorney's Office neglected its duty to properly investigate and prosecute the fraudulent actions, leading to significant harm to Mr. Tran.

**Case Law:**

- **Monell v. Department of Social Services of the City of New York**, 436 U.S. 658 (1978): "Local governing bodies... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." The DA's office's failure to act on clear evidence of fraud reflects a policy of neglect and dereliction of duty. Again points out it doesn't not matter if the actions taken where under someone's authority to do so...it clarifies weather or not the action when taken was constitutional. Judge Jeffrey s Williams's writ of possession was not constitutional; his authority to write one maybe constitutional; but it's manifestation in and of itself related to our claim was not and it links directly into this.


- **Owen v. City of Independence**, 445 U.S. 622 (1980): "A municipality may be held liable under § 1983 for constitutional violations resulting from its policies or customs." The DA's neglect resulted in the wrongful loss of Mr. Tran's property, and they are not immune from liability.
- **Pembaur v. City of Cincinnati**, 475 U.S. 469 (1986): "Municipal liability attaches where... the decision maker possesses final authority to establish municipal policy with respect to the action ordered." The DA's decision not to prosecute due to familial relations was a deliberate action leading to Mr. Tran's harm. Judge Jeffrey S Williams as well in all his actions. The clerk once made aware of blatant fraud should have the authority to correct its own filings! And finally the constables office actions related to an unconstitutional court order in the face of real deeds.


- **Board of County Commissioners v. Brown**, 520 U.S. 397 (1997): "A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." All of these agencies as municipal offices each gave their own

opinions related to their duty to protect the rights of thien Tony hoang tran and jayden lashunn kannedy. Judge Jeffrey Williams justified his deliberate indifference by claiming himself a King; and citing his inability to determine fraud In the face of two clearly different documents. One with a full government name and signature on it; the other with just enough to steal a home. HPD cited numerous occasions of not arresting for breaking and entering crimes-harassment crimes, and failure to assign a detective until the DAs office faced the threat of legal action. The DA throughout the years blatantly ignored pleas from the plaintiff and worse gave their case to an intern Jamie Franks Culotta who just ghosted them. No meaningful response from the DAs office at all.

## 5. Violation of Property Rights (Fifth and Fourteenth Amendments)

Mr. Tran's property was taken without just compensation and proper legal procedure, violating his rights under the Fifth and Fourteenth Amendments.

**Case Law:**

- **Kelo v. City of New London**, 545 U.S. 469 (2005): "The takings clause of the Fifth Amendment... provides that private property shall not be taken for public use without just compensation." The biased judicial process and failure to act on fraud evidence deprived Mr. Tran of his property rights without due process.
- **Loretto v. Teleprompter Manhattan CATV Corp.**, 458 U.S. 419 (1982): "When the 'character of the governmental action' is a permanent physical occupation of property, our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner." The forced eviction and loss of property without due compensation or proper process amount to an unconstitutional taking.
- **Lucas v. South Carolina Coastal Council**, 505 U.S. 1003 (1992): "Where regulation denies all economically beneficial or productive use of land, compensation must be paid to sustain it." The fraudulent deed and subsequent eviction deprived Mr. Tran of all beneficial use of his property.
- **Horne v. Department of Agriculture**, 576 U.S. 351 (2015): "The Fifth Amendment requires that the Government pay just compensation when it takes personal property, just as when it takes real property." Mr. Tran's loss of property without compensation or due process violates his constitutional rights.

## 6. Abuse of Judicial Authority

Judge Jeffrey S. Williams's actions, including biased questioning and calling himself a "King," demonstrate a misuse of judicial authority and a prejudiced disposition that undermined the fairness of the proceedings.

**Case Law:**

- **Caperton v. A.T. Massey Coal Co., Inc.**, 556 U.S. 868 (2009): "The Due Process Clause of the Fourteenth Amendment requires recusal when the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." Judge Williams's biased actions and statements showed a significant probability of bias, warranting recusal and rendering the process unfair.
- **In re Murchison**, 349 U.S. 133 (1955): "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." Judge Williams's behavior and statements indicated actual bias against Mr. Tran.
- **Tumey v. Ohio**, 273 U.S. 510 (1927): "No man is permitted to try cases where he has an interest in the outcome." Judge Williams's statements and actions suggest a personal bias that influenced his judicial decisions.
- **Ward v. Village of Monroeville**, 409 U.S. 57 (1972): "The test is whether the judge's situation is one 'which would offer a possible temptation to the average man as a judge... which might lead him not to hold the balance nice, clear, and true.'" Judge Williams's self-described role as a "King" and biased questioning offered a clear temptation to disregard impartiality.

## 7. Fraud

The fraudulent creation and filing of a deed by Hoa Xuan Tran and viet tan nguyen aka Victor Nguyen. Deprived Mr. Tran and Mr. kannedy of their rightful property.

**Case Law:**

- **Ernst & Ernst v. Hochfelder**, 425 U.S. 185 (1976): "A plaintiff must prove... that the defendant made a false statement or omitted a material fact, that the defendant acted with knowledge or severe recklessness, and that the plaintiff relied upon the false statement or omission to his detriment." HOA XUAN TRAN and Viet Tan Nguyen / Victor Nguyen, knowingly created and filed a fraudulent deed, leading to Mr. Tran's detrimental reliance and loss of property. Further king judge Jeffrey S Williams ignored pages of documentation for one piece of

paper...because he was racist in his treatment of jayden lashunn kannedy and biased in his proceedings. He truly thought himself a king.

- **Securities and Exchange Commission v. Zandford**, 535 U.S. 813 (2002): "It is enough that the scheme to defraud and the sale of securities coincide." Here, the fraudulent scheme involved the creation and filing of a false deed, however even this case of financial crimes highlights the court's opinion related to fraudulent schemes like these.
- **Dura Pharmaceuticals, Inc. v. Broudo**, 544 U.S. 336 (2005): "The plaintiff must prove that the defendant's fraud caused an economic loss." Mr. Tran experienced significant economic loss due to the fraudulent deed and subsequent legal actions. The municipality as a whole through numerous agencies was just...my god it is what it is...it's a mess. The home was a huge economic loss for people in their early 20s.

- **Basic Inc. v. Levinson**, 485 U.S. 224 (1988): "A defendant's misleading statement or omission must have 'a substantial likelihood' of influencing the investment decision of a reasonable investor." There was a property company interested in purchasing mr trans home

**Application to Plaintiff's Case:**

**Violation of Due Process Rights:** Mr. Tran and Mr. kannedy were deprived of their property without a fair trial due to the judge's bias and the DA's refusal to act on evidence, violating their due process rights under the Fourteenth Amendment.

**Equal Protection Violation:** The DA's selective inaction based on familial relations denied Mr. Tran and Mr. kannedy equal protection under the law, as similarly situated individuals would have received prosecution of the fraudsters.

**Failure to Train:** The DA's office's lack of training for its employees, particularly Jaime Franks Culotta, led to the mishandling of Mr. Tran's case, reflecting a deliberate indifference to the rights of individuals affected by fraud.

**Dereliction of Duty:** The DA's office neglected its duty to investigate and prosecute the clear evidence of fraud, resulting in harm to Mr. Tran and Mr. kannedy.

**Violation of Property Rights:** Mr. Tran and Mr. kannedy's property was taken without just compensation and through a flawed legal process, violating their Fifth and Fourteenth Amendment rights.

**Abuse of Judicial Authority:** Judge Williams's biased questioning and self-proclaimed role as a "King" demonstrate a misuse of judicial authority, undermining the fairness of the trial.

**Fraud:** The fraudulent deed created by Hoa Tran and Viet Tan Nguyen (Victor Ngyuen) directly caused the loss of Mr. Tran and Mr. kannedy's property, entitling them to legal remedies for the fraud committed against them.

These causes of action, supported by relevant case law, establish a strong foundation for Mr. Tran and Mr. kannedy's legal claims and illustrate the constitutional violations and damages they have suffered.

**EXPRESSION OF OFFICIAL POLICY OR CUSTOM: OR PRACTICE SO ENTRENCHED IT CAN BE TREATED AS SUCH**

- The consistent mishandling of Mr. Tran's case by multiple city employees, including the judge, the DA's office, and the clerks at the county office, demonstrates a systemic failure to protect citizens' rights. This widespread negligence among various branches of city administration indicates an implicit custom or practice within the city.

- The failure of the city to adequately train its employees in recognizing and addressing fraudulent documents, despite the frequency of similar cases, points to a systemic deficiency in the city's training programs. This lack of proper training has directly led to constitutional violations in Mr. Tran's case and is indicative of a custom or practice within the city.

- The repeated instances of selective non-prosecution by the DA's office, despite clear evidence provided by Mr. Tran, suggest a pattern of leniency toward employees' discretion. This consistent failure to uphold the law and protect citizens' rights demonstrates a custom or practice within the city of prioritizing personal relationships over legal obligations, Leading to preventable harm.

**2. Causation**

- The direct causal link between the city's failure to properly train its employees and the constitutional violations in Mr. Tran's case is evident. Had the employees been

adequately trained to recognize and address fraudulent documents, the violations could have been prevented, highlighting the city's responsibility for the harm caused.

- The consistent mishandling of Mr. Tran's case by multiple city employees, despite clear evidence provided by Mr. Tran, demonstrates a systemic failure within the city's operations. This widespread negligence directly contributed to the violations of Mr. Tran's constitutional rights, establishing a causal link between the city's actions and the harm suffered by Mr. Tran.

- The failure of the DA's office to prosecute cases involving fraud and forgery, despite repeated reports and evidence provided by Mr. Tran, is indicative of a systemic issue within the city's legal system. This consistent failure to take appropriate action directly resulted in the violation of Mr. Tran's rights, demonstrating the city's culpability for the harm caused.

## 3. Deliberate Indifference

- The city's consistent failure to address the systemic deficiencies in its training programs and legal procedures, despite repeated instances of constitutional violations, demonstrates deliberate indifference to the rights of its citizens. This widespread negligence among all employees indicates a culture of indifference within the city's administration.

- The failure of the city to take corrective action in response to repeated reports and evidence of constitutional violations indicates a conscious disregard for citizens' rights. This deliberate indifference is evidenced by the city's leniency toward employees' discretion and its failure to uphold legal obligations.

- The repeated instances of selective non-prosecution by the DA's office, despite clear evidence provided by Mr. Tran, demonstrate a deliberate indifference to the enforcement of the law. This consistent failure to hold individuals accountable for their actions highlights the city's indifference to the rights of its citizens and its prioritization of personal relationships over legal obligations.

# Complaint for Violation of Constitutional Rights, Fraud, and Other Causes of Action

## Jurisdictional Facts:

1. **Federal Question Jurisdiction (28 U.S.C. § 1331):**
   - **This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the plaintiff's claims arise under the Constitution and laws of the United States, including the Fourteenth Amendment.**

2. **Diversity Jurisdiction (28 U.S.C. § 1332):**
   - The amount in controversy exceeds $75,000, exclusive of interest and costs. The parties are citizens of different states, thus meeting the requirements for diversity jurisdiction under 28 U.S.C. § 1332.
3. **Supplemental Jurisdiction (28 U.S.C. § 1367):**
   - This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 as they are related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

**Supporting summary and case laws**

**1. Due Process Violations (Fourteenth Amendment)**

**Allegation:**

On April 28, 2022, during eviction proceedings presided over by Judge Jeffrey S. Williams, Plaintiff Jayden Kannedy was silenced and prohibited from participating in the proceedings until after Judge Williams had heard from all other parties. Plaintiff Kannedy was allowed to speak only at the end of the session, denying him a meaningful opportunity to defend or comment on any statements or evidence introduced earlier. This denial of participation, under threat of contempt, deprived him of his due process rights.

**Supporting Case Law:**

**Armstrong v. Manzo, 380 U.S. 545 (1965):**

The Supreme Court emphasized that "a fundamental requirement of due process is 'the opportunity to be heard.'" By withholding Kannedy's right to speak during critical stages of the proceedings, Judge Williams denied him this foundational right.

**Mathews v. Eldridge, 424 U.S. 319 (1976):**

The Court identified three factors for due process analysis—"the private interest affected, the risk of erroneous deprivation, and the government's interest."

Here, Kannedy's private interest in defending his right to property was substantial, and the risk of erroneous deprivation was heightened due to his silencing. The Court in *Mathews* noted the need for procedural protections to avoid unjust deprivations.

Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982):

"The requirement of due process applies to deprivations of property." Kannedy's exclusion from the proceedings deprived him of his right to a fair process in a property matter.

### 2. Equal Protection Violation (Fourteenth Amendment)

Allegation:

Plaintiffs allege that the actions of Judge Williams in silencing Kannedy, the only Black male in the courtroom, and the District Attorney's Office in declining to prosecute based on familial relationships with the perpetrator, violated their right to equal protection. Plaintiffs assert that this discriminatory treatment amounted to arbitrary and racially biased enforcement of legal procedures.

Supporting Case Law:

Village of Willowbrook v. Olech, 528 U.S. 562 (2000):

The Court held that equal protection claims can be brought by a "class of one," where an individual is intentionally treated differently without rational basis. Here, the selective inaction of the District Attorney's Office and Judge Williams's differential treatment of Kannedy suggest arbitrary and irrational distinctions.

Yick Wo v. Hopkins, 118 U.S. 356 (1886):

The Court ruled that discriminatory enforcement of laws violates the Equal Protection Clause, stating, "Though the law itself be fair on its face... if it is applied... with an evil eye and an unequal hand," it constitutes a violation.

Plaintiffs allege that the DA's refusal to prosecute based on family relationships, coupled with racial bias in the court, reflects such discriminatory application.

**Whren v. United States, 517 U.S. 806 (1996):**

The Court reaffirmed that "the Constitution prohibits selective enforcement of the law based on considerations such as race." Plaintiffs argue that Judge Williams's treatment of Kannedy, along with the DA's selective enforcement, constitutes unconstitutional discrimination.

## 3. Judicial Authority Abuse (Due Process and Equal Protection)

**Allegation:**

Plaintiffs allege that Judge Jeffrey S. Williams demonstrated judicial bias and misconduct, exemplified by his self-identification as a "King" during court proceedings, which Plaintiffs argue undermined impartiality and fairness. Judge Williams's conduct contributed to an unfair trial environment, influenced by personal bias and arbitrary treatment of Kannedy.

**Supporting Case Law:**

**Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868 (2009):**

The Court held that due process requires recusal when the probability of actual bias is "too high to be constitutionally tolerable." Judge Williams's behavior, particularly his conduct as a "King" and silencing Kannedy, raises substantial questions of bias.

- In re Murchison, 349 U.S. 133 (1955): The Supreme Court stated,

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness requires an absence of actual bias."

By adopting a prejudiced stance and addressing Kannedy in a racially insensitive manner, Judge Williams failed to maintain the standard of impartiality.

**Ward v. Village of Monroeville, 409 U.S. 57 (1972):**

This case emphasized that even the appearance of bias from a judge is incompatible with due process, as it undermines trust in the judicial system. Plaintiffs allege that Williams's conduct exemplifies bias incompatible with fair judicial authority.

### 4. Prosecutorial Misconduct (Fourteenth Amendment)

**Allegation:** Plaintiffs allege that the Harris County District Attorney's Office failed to prosecute forgery and fraud despite substantial evidence, with the DA's office indicating discomfort in prosecuting due to the familial relationship between the perpetrator and one of the plaintiffs. Plaintiffs claim this refusal to prosecute amounted to prosecutorial misconduct, resulting in a denial of equal protection and due process.

**Supporting Case Law:**

**Imbler v. Pachtman, 424 U.S. 409 (1976):**

This landmark decision established that prosecutors have a duty to act as ministers of justice, ensuring fairness rather than focusing solely on securing convictions. The Court emphasized,

"The prosecutor's job isn't that it shall win a case, but that justice shall be done." Plaintiffs argue that the DA's selective inaction violates this foundational prosecutorial duty.

**-Wayte v. United States, 470 U.S. 598 (1985):**

The Supreme Court recognized that prosecutorial discretion is broad, but cannot be based on arbitrary factors. Here, the DA's office allegedly exercised discretion based on personal relationships rather than objective evidence, compromising the plaintiffs' constitutional rights.

United States v. Armstrong, 517 U.S. 456 (1996):

In Armstrong, the Court held that selective prosecution violates the Equal Protection Clause when based on arbitrary criteria like race or personal connections. Plaintiffs claim that the DA's refusal to prosecute due to familial relations exemplifies such selective enforcement, infringing on equal protection.

## 5. Racial Bias and Discriminatory Treatment (Fourteenth Amendment - Equal Protection)

**Allegation:**

Plaintiffs contend that the racial bias exhibited by Judge Williams and the discriminatory treatment by the DA's office, including the selective silencing of Plaintiff Kannedy during proceedings, constituted a violation of equal protection under the Fourteenth Amendment. Kannedy, a Black male, was not afforded the same respect and procedural fairness as others in the courtroom, amplifying discriminatory enforcement of the law.

**Supporting Case Law:**

Batson v. Kentucky, 476 U.S. 79 (1986):

Batson highlights that racial discrimination in the courtroom undermines public confidence in the justice system and violates equal protection. "Discrimination in the courtroom on the basis of race diminishes the integrity of the judicial system," the Court stated, underscoring the gravity of racial bias.

Flowers v. Mississippi, 139 S. Ct. 2228 (2019):

The Supreme Court reiterated that even subtle forms of discrimination in judicial proceedings erode trust in the judiciary, stating, "Racial discrimination in the administration of justice is especially pernicious." Plaintiff's claim that the biased handling of Kannedy's testimony and selective treatment fit this criterion of racial discrimination.

**Whren v. United States, 517 U.S. 806 (1996):**

In Whren, the Court emphasized that discriminatory application of the law violates equal protection, noting,

"The Constitution prohibits selective enforcement of the law based on considerations such as race." Plaintiffs argue that the racially disparate treatment of Kennedy reflects a violation of these principles.

**6. Municipal Liability (42 U.S.C. § 1983)**

Allegation: Plaintiffs assert that the City of Houston and Harris County failed to properly train and supervise employees responsible for processing property documents, handling fraud investigations, and prosecuting crimes. This failure led to a breakdown in procedural safeguards and contributed to the deprivation of Plaintiffs' property rights.

**Supporting Case Law:**

**City of Canton v. Harris, 489 U.S. 378 (1989):**

The Court held that municipal liability under § 1983 attaches when a failure to train amounts to "deliberate indifference" to the rights of persons with whom the police come into contact. Plaintiffs argue that Harris County's lack of adequate training on processing fraudulent property claims; by the HCDAO shows deliberate indifference to due process protections.

**Connick v. Thompson, 563 U.S. 51 (2011):**

This case emphasizes that a lack of training on core constitutional protections can constitute municipal liability. The Court stated, "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." Plaintiffs claim that repeated failures to address fraudulent documents indicate a systemic issue of inadequate training.

**Monell v. Department of Social Services, 436 U.S. 658 (1978):**

In Monell, the Court affirmed that a local government can be held liable under § 1983 when a policy or custom causes a constitutional violation. Plaintiffs allege that the City

and County's neglect in training employees created an unconstitutional policy of inaction toward fraudulent property transactions.

**7. Violation of Property Rights (Fifth and Fourteenth Amendment's - Takings Clause)**

Allegation: Plaintiffs allege that their property rights were violated when the City and County failed to act on fraud reports, allowing the fraudulent deed to go unchallenged and facilitating an eviction based on false documentation. Plaintiffs claim this resulted in an unconstitutional taking without just compensation.

Supporting Case Law:

Kelo v. City of New London, 545 U.S. 469 (2005):

The Court's opinion clarified that the government may not take private property without just compensation. Plaintiffs argue that by allowing a fraudulent deed to stand, the County and City effectively deprived them of property rights without compensation.

Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992):

The Court held that government action that denies all economically viable use of land constitutes a taking. Plaintiffs contend that the fraudulent eviction resulted in complete deprivation of their property's use and value.

Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982): The Court ruled that even minimal permanent physical occupation constitutes a taking. Plaintiffs argue that the County's inaction led to an involuntary loss of property that should be considered a taking under the Fifth Amendment.

8. Abuse of Judicial Authority and Bias

Allegation: Plaintiffs claim that Judge Williams misused his judicial authority, evidenced by self-referencing as a "King" and applying procedural rules discriminatorily against Kannedy. This abuse of authority led to an unfair trial and resulted in bias, depriving Plaintiffs of impartial judicial process.

**Supporting Case Law:**

**Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868 (2009):**

The Court's decision underscores the necessity of recusal when there is a significant risk of bias. By stating his position as a "King" and showing overt preference, Plaintiffs argue that Judge Williams's actions compromised the integrity of the proceedings.

**Tumey v. Ohio, 273 U.S. 510 (1927):** The Court held that due process requires judges to act without personal interest or bias in cases. Plaintiffs allege that Judge Williams's statements and conduct demonstrated a personal bias that tainted the trial's fairness.

**In re Murchison, 349 U.S. 133 (1955):**

This case asserts that "A fair trial in a fair tribunal is a basic requirement of due process," with fairness requiring a judge to be free from actual bias. Plaintiffs argue that Judge Williams's behavior did not meet this constitutional standard.

**Summary**

This complaint arises from egregious violations of the constitutional and statutory rights of the Plaintiffs, Jayden L. Kannedy and Thien Tony Hoang Tran, stemming from systemic negligence, judicial bias, discriminatory practices, and municipal failures by Harris County officials and associated agencies. The Plaintiffs allege the following:

**Judicial Misconduct:**

A Justice of the Peace acted with bias, making racially charged comments, obstructing fair trial rights, and enforcing a fraudulent eviction writ. The presiding judge referred to himself as a "King," undermining the impartiality required of his office. Completely silencing a defendant who is well trained in legal quorum, while not in practice.

**Fraudulent Property Deprivation:**

Plaintiffs were deprived of their rightful property through the filing of a fraudulent deed. Despite ample evidence, local law enforcement and prosecutorial offices failed to act on this fraud, allowing the perpetrators to sell the property unlawfully.

**Systemic Municipal Failures:**

Harris County's failure to train employees, prosecute crimes, and uphold constitutional rights created a culture of deliberate indifference that caused substantial harm to the Plaintiffs.

**Violation of Equal Protection and Due Process:**

Plaintiffs were subjected to racial discrimination, selective enforcement, and procedural violations that deprived them of their property, dignity, and trust in public institutions.

**Unconstitutional Actions by Law Enforcement:**

Law enforcement officers forcibly evicted the Plaintiffs under a constitutionally deficient writ, violating their rights under the Fifth and Fourteenth Amendments.

## Prayer for Relief

The plaintiff, Thien Tony Hoang Tran, and Jayden Lashunn kannedy, request the following relief:

1. **Restitution:**
   - $15,000,000 USD ($7,500,000 to each plaintiff) to cover financial losses, emotional suffering, years homelessness, and the erosion of trust in the legal system. Loss of property, Canine family members, loss of rental income. Damage to credit report - wrongful eviction making it next to impossible to find safe places to rent. Payments for constitutional rights violations in regards to forceful eviction and loss of Procession of property.

## Jury Demand:

Plaintiff's are fully confident in their ability to break this case down in layman's terms for a jury to understand and make a well informed decision.

**The plaintiff hereby formally requests a trial by jury, as entitled under the applicable rules of procedure. THIS IS A DEMAND FOR A TRIAL BY JURY AND AN EXPRESS DENIAL OF MAGISTRATE JUDICIAL AUTHORITIES.**

**Conclusion:**

In light of the foregoing factual allegations, it is abundantly clear that the plaintiff(s), Thien Tony Hoang Tran and Jayden Lashunn Kannedy, have been subjected to egregious violations of their legal rights, resulting in significant harm and loss. The proceedings before Hon. Judge Jeffrey S. Williams at the Justice of the Peace PCT. 5 Place 2, Harris County, Houston TX, were marred by evident bias, prejudice, and a failure to uphold the principles of fair and impartial justice.

Judge Williams's conduct during the civil eviction proceedings, characterized by the introduction of irrelevant and prejudicial inquiries regarding drug use, showcased a departure from the proper judicial standard. These actions not only violated the plaintiff's right to a fair trial but also undermined the integrity of the judicial process.

Moreover, the plaintiff's efforts to seek redress through legal channels, including reporting instances of fraud to the Houston Police Department and engaging with the Harris County District Attorney's Office, were met with gross negligence and dereliction of duty. Despite providing substantial evidence of fraudulent activity, including false deeds and criminal acts perpetrated by the plaintiff's own mother and her intimate partner, the authorities failed to conduct a thorough investigation or take appropriate legal action.

This failure on the part of law enforcement and judicial authorities resulted in the unauthorized sale of the plaintiff's home, financial damages, and significant emotional distress. The defendants' disregard for their obligations under the law has caused irreparable harm to the plaintiff's rights and interests.

In light of the severity of the violations and the resulting harm suffered by the plaintiff, It is imperative that corrective measures be taken to rectify the injustices perpetrated against the plaintiffs.

**Exhibits:**

To follow the criminals' cases in real time and print out any records from the court, you will need to create a free online account with the Harris County District Clerk's Office at www.hcdistrictclerk.com. Once you've created a new account, navigate to "Search Our Records" and click on the "Criminal" tab. Enter the cause number to pull up the cases. Clicking on the case title will bring you to the case summary window. The

"Images" tab will contain filings/orders/motions/etc. available for public viewing. The cause numbers are:

- **Victor Nguyen, Harris County Cause Number 1855788 (Notary of fraudulent Deed)**
- **Hoa Tran, Harris County Cause Number 1855893 (Benefactor of fraudulent deed)**

All relevant evidence. A list of evidence to be used for trial includes:

- **Mr. Tran's Legal Deed of Trust**
- **The fraudulent warranty deed**

  **Easy signature comparison; Mr. Thien Tony Hoang Tran's name isn't even fully present on the fraudulent document.**

- **Correspondence with DA's Office and Intern**
- **Proof of Unconstitutional Writ of possession granted by Jeffrey S. Williams (accessible via public court record; Case number provided in complaint)**
- **Closing documentation from when Mr. Tran purchased the property**
- **Detective Connor Evans affidavit of fraud. (Exhibit A)**

- **video evidence of illegal eviction and constables who executed the writ. (To be provided with "discovery" if video proof is necessary)**

Plaintiffs are confident a jury will understand and empathize with the plea of a homeowner who showed all the facts and was left to fend for themselves by a municipal system that ignored all solid evidence; and enabled these criminals to do as much damage as possible.  Only when legal action was leveraged, did they move to protect. This is not the way the game is played. These players messed up.

Further, Did king judge Jeffrey s Williams make it a regular practice in his courtroom to ignore evidence?

How many others saw their property rights taken without just evaluation of their evidence. Truly this complaint is just a glimpse into a possible larger class action lawsuit against the county.

There's already published documentation of at least 1 other person who experienced this at the hammer of jeffrey s williams

https://lawsintexas.com/texas-state-judge-jeff-williams-violates-renters-rights-in-eviction-cases-in-keeping-with-judicial-precedent/

In light of the overwhelming factual and evidentiary record, and given the deliberate disregard of lawful procedure by those entrusted with public authority, it must be noted that the laws of both man and higher order do not permit immunity from consequence. To that end, this Court is reminded that equity, like justice, is self-correcting. As such, those actors who knowingly ignored their duties, enabled fraud, and failed to intervene when prompted, are not only liable in their official capacity but remain tethered to the enduring weight of every consequence that follows. In systems of order—both constitutional and karmic—authority cannot be shielded by silence nor upheld by selective blindness. The scales, when tilted so far by negligence, invite not only civil remedy but a balancing that reaches into the fabric of truth itself. The Plaintiffs do not seek vengeance, only that the wheel of accountability turn without obstruction, and that all decisions made herein reflect not just legal precedent, but the gravity of what has been endured—lest that burden be transferred, in full, to those and their descendants who chose inaction over duty enabling such a transgression.

Simply put this is not the way the game is played. We've lost years of our youth to recovering from this ordeal.  so Let it be entered into this existing public record that every decision rendered by agents of this court, municipality, or office—be they clerks, judges, constables, or attorneys—invokes a binding upon themselves, measured not only by statute but by a higher jurisdiction of consequence. Those who act in deliberate indifference to truth, who suppress evidence, silence the innocent, and assist in the theft of home and property, are prayed to be karmically bound to the outcomes of their actions, regardless of temporal delay or bureaucratic excuse. This submission serves as both invocation and invocation-denial: no soul, officer, or institution may claim ignorance, immunity, or detachment in higher jurisdiction of consequence. For they bear witness to all things they do in shadow, and they will not forget. Let each decision maker, by their own hand, and conscious judgement accept full and unyielding resonance with the harm they failed to stop or chose to enable. Let no lower counsel, internal or external, spiritual or state-sanctioned, obscure that bond. Balance is required and expected. OUR EXPERIENCE IN THIS REALITY ALONG WITH THE LIVING WILL OF GOD ALMIGHTY, ENFORCES THESE TRUTHS. NOT TO MENTION A PLETHORA OF EARTHLY EVIDENCE...

LET ALL WHO WISH TO JUMP THROUGH HOOPS TO CHEAT TRUTH AND KARMA - FOR EARTHLY MONEY - FACE THE MIRROR OF THEIR ACTIONS; UNTIL TRUE BALANCE IS ACHIEVED. THIS IS OUR PLEA.

**Verification or Certification:**

I VERIFY THE TRUTHFULNESS OF THESE FACTUAL ALLEGATIONS BEFORE THE LIVING GOD AND ALL AUTHORITIES UNDERNEATH. ALL CLAIMS ARE CONSIDERED FACT AND TRUTH BY THE PLAINTIFF(S).

**Thien Tony Hoang Tran**

**Jayden Lashunn kannedy**

**Contact Information:**

- **Email:** antonio7tran@gmail.com (there is a 7 in the middle)
- **Email:** jaydenkannedy@gmail.com
- **Phone: 832-837-1255**

**Physical Correspondences Should Be Sent To:**

**Jayden Lashunn Kannedy & Thien Tony Hoang Tran**

10000 Hammerly Blvd Apt. #240, Houston, TX 77080